[Civ. No. 6871.   Fourth Dist.   Oct. 29, 1962.]

JOSE JESUS CHAVEZ, Plaintiff and Appellant, v. CHARLES P. SPRAGUE, Defendant and Respondent.

Harney, Ford & Schlottman and James A. Dumas for Plaintiff and Appellant.

Swing, Swing & Fisher and Everett H. Swing for Defendant and Respondent.

GRIFFIN, P. J.—This is a so-called malpractice action brought by plaintiff-appellant against defendant-respondent Dr. Charles P. Sprague (hereinafter referred to as defendant) et al., to recover damages for bodily injuries claimed to have been proximately caused by professional negligence on the part of defendant in the performance of a surgical operation known as a thyroidectomy while plaintiff was an indigent patient of the San Bernardino County Charity Hospital, said hospital being owned and operated by the County of San Bernardino in its governmental capacity. Plaintiff alleged these facts in his complaint, and also alleged that defendant and Does One through Ten were physicians and surgeons; that he engaged their services for the purpose of performing on him the operation described in the said charity hospital; that defendants, including Does One through Ten, were not employees or officers of said hospital and therefore no claim was required to be filed with them or the County of San Bernardino within 90 days of the injury, as required by Government Code, sections 1981 and 2003; that during the operation on plaintiff, defendants were donating their services to said hospital without receiving any monetary compensation or other consideration from said hospital; and that on November 22, 1957, they negligently performed the operation.

Defendant filed an answer denying generally these allegations and admitted that an operation was performed, but claimed that it was performed by other doctors sued as defendants Does One through Ten, employees of the County of San Bernardino, and that he only exercised supervision over them by virtue of his employment by the county as a member of the volunteer medical staff.

It was alleged in the answer, as a special defense, that defendant was a public employee of San Bernardino County

and was acting within the scope of his employment as such public employee, and no verified claim for such damages was presented in writing or otherwise, or filed with him within 90 days after the occurrence of the accident or injury complained of, nor was such a claim filed with the clerk of the legislative body of said county, and accordingly plaintiff's claim is barred by Government Code, section 1981 (now § 801).

In the pretrial conference order, all fictitious defendants were dismissed because they were not served with process. It was agreed that among the issues remaining were: (1) capacity and status of defendant as a public officer or employee of the County of San Bernardino at the time such operation was performed; (2) the relationship between defendant and each of the other persons who participated in the performance of such surgical operation; (3) the nature and extent of the participation, if any, by defendant in the performance of the surgical operation; and (4) whether noncompliance by plaintiff with the requirements of Government Code, sections 1981 and 2003, was a bar to the prosecution of the action.

At the trial, the court, upon stipulation of the parties, proceeded under Code of Civil Procedure, section 597, to trial of the special defense that the prosecution of the action was barred by reason of noncompliance by plaintiff with the claims provisions of Government Code, section 1981 and section 2003 (now § 803).

It appears from the pretrial statement that at all times here involved the San Bernardino County Charity Hospital was a public charitable hospital, owned and operated by the County of San Bernardino; that plaintiff was admitted thereto as a patient on November 20, 1957 for diagnosis and treatment of ailments; that plaintiff's ailments were diagnosed by employees of the County of San Bernardino and that such employees prescribed a surgical operation for the ailment from which plaintiff was then suffering; that at all times involved, Dr. S. Kase, Dr. M. Call and Dr. H. Dutro were physicians and surgeons employed by the County of San Bernardino, as resident, intern and anesthetist, respectively, at said hospital, and that they were, at all times mentioned, acting within the course and scope of their respective employments by said county; that on November 22, 1957, a surgical operation was in fact performed upon plaintiff by the said Dr. Kase, as indicated operator, and Dr. M. Call, as indicated first assistant, under an anesthetic administered by the said Dr. Dutro; that at all times during the performance of said surgical operation,

from the beginning of the skin incision until the skin incision was closed, defendant Dr. Sprague was personally present in the operating room where said operation was performed and observed the performance of said operation.

## Claim Statute

After considering the question of whether Government Code, section 2003, was applicable under the pleadings and facts stated, the court held that section was applicable and was a proper defense to raise in the action and proceeded to determine the status of defendant as being a county employee within the meaning of that section.

The first question on this appeal to be determined is the correctness of this ruling. Plaintiff relies upon the case of *Stewart* v. *McCollister*, 37 Cal.2d 203 [231 P.2d 48] (decided May 15, 1951), based on section 1981 of the Government Code, holding in effect that compliance with the claims provisions of that section was not required unless the plaintiff, in his complaint, "claimed" (pleaded) that the defendant was a public officer or employee and that his negligence had occurred in the course of his public employment. Soon after this decision, the Legislature adopted Government Code, section 2003, which took effect on September 22, 1951, reading:

"A cause of action against an employee of a district, county . . . for damages resulting from any negligence upon the part of such employee while acting within the course and scope of such employment shall be barred unless a written claim for such damages has been presented to the employing district, county . . . in the manner and within the period prescribed by law as a condition to maintaining an action therefor against such governmental entity."

The cause of action in the instant case arose on November 22, 1957, and the complaint was filed on November 5, 1958. Had this cause of action arisen and been filed before the adoption of Government Code, section 2003, the facts would have brought it within the holding in *Stewart* v. *McCollister*, *supra*, 37 Cal.2d 203, but the immediate enactment thereafter of section 2003 fairly indicates a legislative intent as to county employees to make noncompliance a bar irrespective of whether the facts giving rise to the defense are pleaded in the complaint or the defense is raised specially by answer, i.e., where the provisions of section 2003 are applicable, that section operates as an independent bar to an action against a public employee for torts arising out of negligence committed within the course and scope of his employment, regardless

of whether the issue as to his status as a public employee is pleaded in the complaint or raised by the answer; that this is the purpose and the effect of the enactment of section 2003 in 1951, after the decision in the *Stewart* case is stated by the author in Civil Procedure Before Trial (Cont. Ed. Bar), page 236, as follows:

"Section 2003 was enacted to overcome the effect of *Stewart* v. *McCollister, supra.* . . . It has not yet been construed by the courts. However, it seems fairly clear that (1) section 2003 applies to all claims within its scope, irrespective of whether public employment allegations appear in the complaint; (2) compliance with section 2003 is a prerequisite to maintenance of an action, and where the comparable entity claim law so provides may be a prerequisite to commencement of such action, against an employee; (3) section 2003 is an additional requirement to section 1981, and in a proper case, both must be complied with; (4) since the time and manner of presentation of a claim under section 2003 depends on the terms of the applicable claim statute governing claims against the employing entity, section 2003 is inoperative if no such entity claim statute exists (such is the case with many cities and districts in relation to certain types of claims)."

Professor Van Alstyne, though opposed to claim statutes in general, has this to say, in 8 U.C.L.A. Law Review, page 516: ". . . in 1951 the legislature attempted to close the *Stewart* loophole by enacting section 2003 (now section 803) of the Government Code. This new section required a claim to be presented to the employing entity as a prerequisite to maintaining any action founded on negligence against the employee, and it was so drafted that its applicability did not depend upon whether 'it was claimed' that such negligence was in the course and scope of employment."

██ Government Code, section 1981 (and by analogy § 2003) has been held to be a constitutional procedural requirement designed to protect public officers and employees from unfounded and harassing litigation. (*Veriddo* v. *Renaud,* 35 Cal.2d 263 [217 P.2d 647]; *Huffaker* v. *Decker,* 77 Cal.App. 2d 383 [175 P.2d 254].) ██ Failure to comply with the claims procedure of Government Code, section 1981, is fatal to the maintenance of an action against an employee whenever Government Code, section 1981, is applicable. (*Ward* v. *Jones,* 39 Cal.2d 756 [249 P.2d 246]; *Rounds* v. *Brown,* 121 Cal.App. 2d 642 [263 P.2d 620]; *Henry* v. *City of Los Angeles,* 114 Cal. App.2d 603 [250 P.2d 643].) A like rule applies whenever Gov-

ernment Code, section 2003, is applicable. (*Bossert* v. *Stokes,* 179 Cal.App.2d 457 [3 Cal.Rptr. 884].)

The Law Revision Commission, which advocates repeal of both sections 1981 and 2003, in its report upon the subject, recognizes this effect, and states it as one of the grounds for its recommendations, in volume 3, California Law Revision Commission Reports, Recommendations and Studies, "A Study Relating to the Presentation of Claims Against Public Officers and Employees," at pages H-32 and H-33:

"It should be recognized that personnel claims procedures tend to operate as a trap for the unwary plaintiff at least equally with, if not to a greater degree than, the entity claims procedures. . . . in *Stewart* v. *McCollister,* the personnel claims procedure places in the hands of the negligent public employee 'the power to conceal the fact of his employment for the short period allowed for the filing of a verified claim, and then to render himself immune from his common law liability by alleging and proving that his alleged negligence occurred in the course of his public employment, and that no verified claim had been filed.'

"The quoted language was used by the court in referring to Section 1981 (now Section 801) in support of the court's conclusion that it would not ascribe to the Legislature any intention to place such a 'nefarious device in the hands of the defendant.' *It is clear that the Legislature did that exact thing, however, by enacting the predecessor of what is now Section 803. A similar device exists in the hands of the defendant under the many charter claim provisions."* (Emphasis ours.)

Plaintiff argues that he did not know of the identity of and the function of defendant Dr. Sprague and the results of the surgery until many months after the date of surgery and after the time for filing a claim had expired, and that therefore he should be excused for such failure. There is no evidence of these claimed facts, nor pleading to support them. The claim provisions of both sections 2003 and 1981 (where applicable) are mandatory, and the alleged ignorance of plaintiff is not a legal excuse for his noncompliance. The courts have consistently declined to hold that any exception (except estoppel) should be read into the claims statutes. (*Allen* v. *Los Angeles City Board of Education,* 173 Cal.App.2d 126 [343 P.2d 170].)

## EMPLOYEE RELATIONSHIP

It is the responsibility of the county and the board of supervisors to support and provide medical and hospital care for

the indigent sick residents of the county. (Welf. & Inst. Code, § 200; Gov. Code, §§ 29600, 29606, 29607.) The board of supervisors is authorized to establish and maintain a county hospital and prescribe rules for its management, appoint a county physician and other necessary officers and employees thereof who shall hold office during the pleasure of the board. (Welf. & Inst. Code, § 203; *Forward* v. *County of San Diego*, 189 Cal. 704 [209 P. 993].)

The duties and powers that are to be exercised by an individual, rather than the mere name that is assigned to his position, determine whether he is an employee or an officer. Under certain circumstances, an appointee may become neither an employee nor an officer in the ordinary sense, but may stand more in the position of an independent contractor. (40 Cal. Jur.2d § 12, p. 651.) It is the claim of plaintiff that defendant should be classified as an independent contractor. (Citing such authority as *Schloendorff* v. *Society of New York Hospital*, 211 N.Y. 125 [105 N.E. 92]; *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]; *Mayers* v. *Litow*, 154 Cal.App.2d 413 [316 P.2d 351]; *Ware* v. *Culp*, 24 Cal.App.2d 22 [74 P.2d 283]; *Konnoff* v. *Fraser*, 62 Cal.App.2d 788 [145 P.2d 368].)

It is conceded that plaintiff was not a private patient of defendant. Plaintiff was referred to the county hospital as an outpatient by a private physician, a Dr. Taylor, on August 26, 1957. He was processed through social service and found eligible for free medical and hospital care as an indigent resident of that county. He was then admitted as an indigent patient. Plaintiff complained of his condition and it was studied by various members of the resident medical staff. He was seen in the medical clinic by a Dr. Navarre, an intern, and other doctors on the medical staff, in consultation with the resident staff. He was seen in the surgical clinic by Dr. Kase, a resident, in consultation with defendant and a Dr. Cram, two members of the volunteer surgical staff, and was scheduled for surgery in about 10 days. On November 20, 1957, he was admitted to the hospital and on November 22 an operation was performed on him by Dr. Kase, a resident, as the operating surgeon, and Dr. Call, an intern, as first assistant, both of whom were paid employees of the county, with defendant in attendance as supervisor and instructor, and designated as second assistant. The superintendent of the county hospital, Dr. Edward Varden, testified that he considered defendant Dr. Sprague to be a county employee in

rendering such service. Defendant did not manually perform any part of the surgical operation and had nothing to do with the postoperative care or treatment. He made no charge to plaintiff for his services. His sole function in this specific case was one of supervision and whatever teaching was incidental to the operation, which function he performed in his capacity as an appointed senior surgeon on the volunteer staff.

At all times while on service, defendant, as a senior surgeon, was subject to the direction and control of the superintendent, exercised through the chief of the surgical department, by virtue of his authority as the representative of the board of supervisors. The superintendent had the power and authority delegated to him by the board of supervisors to require defendant's attendance whenever his services were reasonably required by the county to treat its indigent patients, could discipline him for disobedience, and could suspend or remove him for cause.

The hospital, in addition to providing medical and hospital care for the indigent sick of the county, was also a teaching institution, engaged in teaching residents, interns, student nurses, clinical laboratory technicians, X-ray technicians and medical students. It also conducted a nurses' training school for registered nurses at the hospital. It was headed by the superintendent, appointed by the board of supervisors, who served on a full-time basis and was paid by the county for his services and was responsible directly to the board of supervisors. He exercised control over all employees, including the volunteer medical staff. The superintendent, in exercising control over the volunteer staff, could determine whether they served or did not serve, and if they did not perform properly he could dismiss them. He had sole charge of the volunteer staff, exercised to some extent through the chief of staff, and had the specific power to discharge a senior surgeon. The degree of the superintendent's control over senior surgeons was not essentially different from his degree of control over the resident or house staff. The personnel who staffed and operated the hospital fell generally into two groups, those who were paid compensation for their services and those who were not. There were approximately 800 paid employees, of which 26 were members of the house medical staff, 10 being residents (resident physicians and surgeons) and 14 being interns. The medical staff of the hospital was divided generally into two branches, those who were paid compensation for their services, namely the residents and interns, called the resident or house

staff, and those who served without compensation, called the "volunteer" or visiting staff. The volunteer medical staff was composed of approximately 160 physicians and surgeons, each of whom contributed his services to the County of San Bernardino without monetary compensation. The value of such services to the County of San Bernardino was indicated to be a little over a half million dollars annually. The medical staff was headed by a chief of staff, appointed by the board of supervisors, who served without compensation. His functions were overseeing coordination of the clinical services of the hospital under the direction of the superintendent. The medical staff, both resident and volunteer, was further divided into departments of medicine, surgery, general practice, obstetrics and gynecology, and the tumor board. Each such department was in turn headed by a chief of staff of the department appointed by the board of supervisors and serving without compensation.

At all times here involved, the chief of staff of the department of surgery was to supervise the various techniques and activities which were carried on in the surgical department. The chief of surgery decided the calendar schedules for both senior and junior surgeons on the volunteer surgical staff. In addition to the chief, the department of surgery consisted of approximately 15 doctors of medicine, each of whom was appointed by the board of supervisors and served without compensation. The appointees to the department of surgery were classified as honorary, consultants, and active associates, the latter of whom were in turn classified as senior surgeons and junior surgeons. The function of a senior surgeon so appointed to the surgical staff was primarily to supervise and teach the resident staff and to perform such surgery as was beyond the ability and training of the resident staff.

Appointments to the volunteer medical staff were made as follows: An eligible licensed physician and surgeon submitted his written application to the superintendent. From the superintendent it went to the chief of the service and from there to the credentials committee, on through other committees, and ultimately it was submitted to the board of supervisors. If approved by the board of supervisors, such approval was endorsed upon the application and the applicant was thereby appointed to the volunteer staff and continued to serve thereafter from year to year by reappointment.

Only indigent ill of the County of San Bernardino were admitted to the county hospital for medical or hospital care.

Private physicians were not permitted to bring their private patients to the hospital for treatment. Members of the volunteer medical staff were not permitted to charge or collect for services rendered by them to the indigent patients accepted at the county hosptial, and they were required to treat whichever patients were assigned to them. Patients admitted to the county hospital had no voice in the selection of their doctors, whether resident or volunteer, and members of the medical staff could not select the patients they desired to treat. A senior surgeon had no right to select those persons, consisting of residents or interns or others, who were to perform operations, but he, as a senior surgeon, was required to attend the operations. Assignments were made routinely by the chief of staff or by the chief of the appropriate department.

Defendant was appointed to the volunteer staff of the department of surgery and classified as a senior surgeon in 1943 by order of the board of supervisors, pursuant to a written application made by him. He continued his services under such appointment in the same capacity. Defendant was assigned to serve in the surgical department during the months of November and December of 1957.

It is clear from the record that no conventional contract of employment, express or implied, was entered into between plaintiff Chavez and defendant Dr. Sprague. Plaintiff was never at any time a *private* patient of defendant. Whatever services, if any, he received from defendant were received by him because he was accepted by the county as an indigent patient.

Considerable reliance is placed by plaintiff upon the fact that defendant did not receive monetary compensation from the County of San Bernardino for his services. ██ The fact that a person is not paid monetary compensation for his services does not prevent him from occupying the status of an employee. (*Tucker* v. *Cooper,* 172 Cal. 663 [158 P. 181]; 32 Cal.Jur.2d sec. 8, p. 404.) ██ In *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.,* 55 Cal.App.2d 234 [130 P.2d 146], it was held that where a person performing work for another is subject to the order, control and direction of such other and is liable to be discharged for disobedience, he is not an "independent contractor" but an "employee." See also *Robinson* v. *George,* 16 Cal.2d 238, 244 [105 P.2d 914]; *Burlingham* v. *Gray,* 22 Cal.2d 87, 99 [137 P.2d 9]; *Orlinoff* v. *Campbell,* 91 Cal.App.2d 382 [205 P.2d 67]; *First Trust & Sav. Bank* v. *Costa,* 83 Cal.App.2d 368 [188 P.2d 778].

We conclude that there was sufficient evidence to support the court's finding that defendant was an employee of the county within the meaning of Government Code, section 2003.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.