Opinion
 

 REGAN, J.
 

 In this action plaintiffs appeal from a judgment of dismissal entered upon an order sustaining defendants’ general demurrers to plaintiffs’ first amended complaint, without leave to amend.
 

 
 *669
 
 This complaint alleged three causes of action. First, a conspiracy was asserted among defendants to deprive plaintiff Andrew Martin Taylor (Taylor) of his federal civil rights (consisting of entitlement to Medi-Cal services). Second, intentional injuries were alleged to the hearts and nervous systems of Taylor’s mother and aunt, Mary Taylor and Catherine Hutek, respectively. These injuries were assertedly caused by wilful misconduct of defendants in refusing Medi-Cal benefits to Taylor. Mary and Catherine were allegedly present with Taylor, and in attendance upon him, when he suffered a high fever and other suffering resulting from lack of Medi-Cal services. Maiy and Catherine were thereby put in fear for their own safety and suffered great emotional shock, disturbance and injury to their nervous systems. Third, negligent conduct of defendants in failing or refusing to accord Medi-Cal benefits to Taylor caused emotional disturbance, shock and physical injury to the hearts and nervous systems of Mary and Catherine, causing great physical and mental pain and suffering.
 

 The complaint alleges defendant Ken Brundage (Brundage), presiding as a hearing examiner for defendant State of California (state), in conspiracy with others, failed or refused to hear certain issues at Taylor’s fair hearing, and failed to rule on all the issues properly before him.
 

 The record reveals that in November 1973, Taylor, while receiving Medi-Cal and attendant care (homemaker) services, was notified by defendants that his attendant care services would be reduced and no Medi-Cal card would be issued after December 1, 1973; Taylor requested a fair hearing; prior to this hearing Taylor became ill but was unable to obtain medical attention because he had no Medi-Cal card. Further, Taylor could not get a pelvic band because defendant Margaret Mitzel (Mitzel) failed to issue or authorize the issuance of a Medi-Cal card.
 

 On January 29, 1974, Brundage presided as hearing officer at a fair hearing and on February 26, 1974, issued his proposed decision granting a Medi-Cal card to Taylor, retroactive to January 1, 1974. The decision was adopted by the Director of the State Department of Health on April 12, 1974.
 

 Taylor requested a rehearing which was held on July 3, 1974, before hearing examiner Coughlin. Additional evidence and testimony was introduced and the examiner’s proposed decision adopted by the Director of the State Department of Health, granted a Medi-Cal card to Taylor retroactive to December 1, 1973, and held Taylor was entitled to the
 
 *670
 
 attendant care services he sought. Taylor did not object to this disposition.
 

 Defendants State of California and Brundage.
 

 The causes alleged as to the state insofar as they are founded upon asserted violations of the federal Civil Rights Act (42 U.S.C. § 1983 et seq.),
 
 [1]
 
 are a nullity. A state cannot be sued as a “person” under the act in circumstances such as alleged or shown here.
 
 (Meyer
 
 v.
 
 State of New Jersey
 
 (3d Cir. 1969) 460 F.2d 1252, 1253;
 
 Bennett
 
 v.
 
 People of State of California
 
 (9th Cir. 1969) 406 F.2d 36, 39;
 
 Monroe
 
 v.
 
 Pape
 
 (1961) 365 U.S. 167, 190-192 [5 L.Ed.2d 492, 506-507, 81 S.Ct. 473].)
 
 [2]
 

 Defendant Brundage is immune from liability, both under the federal Civil Rights Act and in tort, since his acts were those of a quasi-judicial officer acting in his official capacity as a hearing examiner employed by the state through the Office of Administrative Hearings. It was at an official fair hearing on Medi-Cal entitlement and attendant care (homemaker) services on behalf of Taylor that Brundage, as presiding hearing examiner, allegedly wilfully failed or refused to hear the issues properly and failed to rule as required by law. The fair hearing was a regular administrative hearing pursuant to Welfare and Institutions Code sections 10950 to 10965. Brundage had the statutory authority to conduct the hearing and to render a decision. (Welf. & Inst. Code, §§ 10953-10955.) The complaint and its attached exhibits show that Brundage did no more or less than exercise his statutory authority in the usual manner, acting in his official capacity as a quasi-judicial officer of the State of California.
 

 It is clear that a judge is not liable under the Civil Rights Act or under any other theory for judicial acts committed within his judicial jurisdic
 
 *671
 
 tion. (See, e.g.,
 
 Pierson
 
 v.
 
 Ray
 
 (1967) 386 U.S. 547, 553-555 [18 L.Ed.2d 288, 294-295, 87 S.Ct. 1213];
 
 Stump
 
 v.
 
 Sparkman
 
 (1978) 435 U.S. 349 [55 L.Ed.2d 331, 98 S.Ct. 2862].) The judicial immunity doctrine has been extended by the courts to persons who are not technically judges but who act in a judicial or quasi-judicial capacity. (See, e.g.,
 
 Silver
 
 v.
 
 Dickson
 
 (9th Cir. 1968) 403 F.2d 642, 643, parole board members;
 
 Sykes
 
 v.
 
 State of California (Dept. of Motor Vehicles)
 
 (9th Cir. 1974) 497 F.2d 197, 201, Department of Motor Vehicles hearing officer.) The case of
 
 Washburn
 
 v.
 
 Shapiro
 
 (S.D.Fla. 1976) 409 F.Supp. 3, 8, is also on point. There a civil damage suit under the federal Civil Rights Act was filed against several persons, including an administrative law judge. The court concluded such administrative judges are immune from any suit for civil damages, on the basis of judicial immunity. Brundage was acting in a quasi-judicial capacity irrespective of his title. (See
 
 Sykes
 
 v.
 
 State of California (Dept. of Motor Vehicles), supra,
 
 497 F.2d at p. 201;
 
 Reif
 
 v.
 
 Commonwealth of Pennsylvania
 
 (E.D.Pa. 1975) 397 F.Supp. 345, 348;
 
 Butz
 
 v.
 
 Economou
 
 (1978) 438 U.S. 478 [57 L.Ed.2d 895, 98 S.Ct. 2894].)
 

 The second and third causes of action in the complaint are tort actions in the nature of actions for personal injury intentionally (wilfully) and negligently inflicted upon plaintiffs by defendants. With respect to the state and its officers, claims in such actions
 
 must
 
 be filed with the State Board of Control as a prerequisite to a lawsuit within 100 days after the cause of action arises. (Gov. Code, §§ 905.2, 911.2, 945.4, 950.2.) Moreover, the statute of limitations on personal injury torts is one year. (Code Civ. Proc., § 340.) The state and Brundage did not specifically raise these limitation bars in demurrer, but the defendant County of Butte did both in writing and at oral argument. The matter is not waived on appeal since noncompliance with the 100-day requirement bars an action irrespective of whether a given party of several fails to raise it at trial. (See
 
 Chavez
 
 v.
 
 Sprague
 
 (1962) 209 Cal.App.2d 101, 106-107 [25 Cal.Rptr. 603].) Moreover, compliance with the 100-day requirement must be alleged, and this complaint shows noncompliance on its face.
 

 The acts complained of by plaintiffs in their lawsuit occurred in November and December 1973, and in Januaiy 1974. That was more than two years prior to filing of the claim with the state on April 20, 1976, and nearly three years prior to the filing of the complaint.
 
 [3]
 
 The last act
 
 *672
 
 conceivably performed by any of the defendants was the decision of defendant Ken Brundage issued on February 26, 1974, and adopted by the State Department of Health on April 12, 1974, still more than two years prior to the filing of the claim and the complaint.
 

 Defendants County of Butte and Margaret Mitzel.
 

 The County of Butte is immune from this action based on the federal Civil Rights Act. The acts complained of were not alleged to have been done in the implementation or execution of any policy statement, ordinance, regulation or decision officially adopted or promulgated as public policy, or as part of a government “custom”; nor is it anywhere indicated in the record that such was the case. (See
 
 Monell
 
 v.
 
 Department of Social Services of the City of New York, supra,
 
 436 U.S. 658; cf.
 
 Monroe
 
 v.
 
 Pape, supra,
 
 365 U.S. 167.) This disposes of the first cause of action as against the county, based on an alleged conspiracy to violate the Civil Rights Act.
 

 As to the second and third causes of action, each is for the infliction (either wilfully or negligently) of emotional distress amounting to personal injury. When a personal injury action is brought against a county and a county employee who has acted in his official capacity a
 
 prerequisite
 
 to a valid cause of action is the filing of a claim with the county within 100 days after the alleged cause of action arises. (Gov. Code, §§ 905.2, 911.2, 945.4, 950.2;
 
 Tietz
 
 v.
 
 Los Angeles Unified Sch. Dist.
 
 (1965) 238 Cal.App.2d 905, 911 [48 Cal.Rptr. 245];
 
 City of San Jose
 
 v.
 
 Superior Court
 
 (1974) 12 Cal.3d 447, 454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) All of the acts of the county which allegedly wronged the plaintiffs occurred in November and December 1973 and Januaiy 1974, and were principally under the direction of defendant Margaret Mitzel, who was chief of the General Eligibility Division of the Butte County Department of Social Welfare. In addition, plaintiffs set forth in their amended complaint that Margaret Mitzel failed to take part in the fair hearing commencing on January 29, 1974, but later appeared at the rehearing commencing on July 3, 1974 (which ultimately resulted in a retroactive granting of a Medi-Cal card and attendant home care services to Taylor). The last act of Mitzel complained of was her letter seeking a further rehearing, written on February 3, 1975. Were we to accept this date as the last date to commence the running of the 100 days for claims and the statute of limitations of one year, we would still reach the result as to the first cause of action that the claim, (filed with the county on Apr.
 
 *673
 
 20, 1976) and the complaint (first filed in Dec. 1976, in Butte County) were too late.
 

 The injuries to plaintiffs Mary and Catherine alleged to have occurred due to failure to issue the Medi-Cal card to Taylor assertedly took place in January 1974. The complaints in the last two causes of action for wilful and negligent infliction of emotional distress were related to their attendance upon and association with the ill Taylor during that month. Under these circumstances, as well as those discussed above, the 100-day requirement for filing of the claim with the county and the statute of limitations on the tort complaint both foreclose this action against the county. The one-year statute of limitations likewise forecloses it against defendant Mitzel as an individual. Moreover, she is immune from tort liability for discretionary acts under the provisions of Government Code sections 820.2 and 821.2 insofar as she was acting as a public official. (See
 
 Miller
 
 v.
 
 Hoagland
 
 (1966) 247 Cal.App.2d 57, 62 [55 Cal.Rptr. 311];
 
 Rubino
 
 v.
 
 Lolli
 
 (1970) 10 Cal.App.3d 1059, 1063 [89 Cal.Rptr. 320].)
 

 Turning now to the possibility of a cause of action existing against Mitzel as an individual under the federal Civil Rights Act (the first cause of action in the complaint) we note that a public official not exercising judicial or quasi-judicial functions is not immune from liability simply because he is a public official.
 
 (Set Anderson
 
 v.
 
 Nosser
 
 (5th Cir. 1972) 456 F.2d 835, 840-841;
 
 James
 
 v.
 
 Ogilvie
 
 (N.D.Ill. 1970) 310 F.Supp. 661, 663;
 
 Rochester
 
 v.
 
 White
 
 (3d Cir. 1974) 503 F.2d 263, 266-267.) However, there are other reasons why a cause is not stated against Mitzel (and others) under count I of the complaint.
 

 Count I is purportedly based on the theory of a
 
 conspiracy
 
 to violate the Civil Rights Act, yet it fails to state facts sufficient to show such a conspiracy. With special reference to the Civil Rights Act, the courts have established precise requirements of conspiracy pleadings. Much more than vague and conclusionary allegations is required. A plaintiff must allege with particularity facts in the form of specific overt acts.
 
 (LaRouche
 
 v.
 
 City of New York
 
 (S.D.N.Y. 1974) 369 F.Supp. 565, 567;
 
 Everett
 
 v.
 
 City of Chester
 
 (E.D.Pa. 1975) 391 F.Supp. 26, 28-29;
 
 Wetherington
 
 v.
 
 Phillips
 
 (E.D.N.C. 1974) 380 F.Supp. 426, 428; affd. 526 F.2d 591;
 
 Furumoto
 
 v.
 
 Lyman
 
 (N.D.Cal. 1973) 362 F.Supp. 1267, 1275;
 
 Rhodes
 
 v.
 
 Houston
 
 (D.Neb. 1962) 202 F.Supp. 624, 638; affd. 309 F.2d 959; cert, den., 372 U.S. 909 [9 L.Ed.2d 719, 83 S.Ct. 724];
 
 Sykes
 
 v.
 
 State of California (Dept. of Motor Vehicles), supra,
 
 497 F.2d at p. 200.) All that
 
 *674
 
 plaintiffs have effectively pleaded here is that defendants were wrong in their actions as public officials with respect to denying a Medi-Cal card and attendant care. The “conspiracy” is attempted to be alleged in the following paragraph:
 

 “At all times herein mentioned, Defendants, and each of them, in doing the acts complained of herein, were co-conspirators engaged in the scheme and conspiracy designed and intended to deprive Plaintiffs of rights guaranteed them under the Constitution and laws of the United States and particularly those herein enumerated.”
 

 There are no allegations of specific facts showing meetings, communications, correspondence, or any indicia of a conspiracy to commit acts designed and intended to deprive plaintiffs of any rights. As the court stated in
 
 Jennings
 
 v.
 
 Nester
 
 (7th Cir. 1955) 217 F.2d 153, 155: “The Civil Rights Acts were enacted to protect the civil rights of individuals, and not to discipline local law enforcement officers for acts that are later corrected. [Citations omitted]. The common law provides adequate actions for damages against errant law enforcement officials. [Citations omitted].” Taylor had a fair hearing and rehearing. Any decision arising out of the origina] determinations on the part of any of the defendants, if erroneous, was corrected when upon rehearing Taylor was granted retroactive Medi-Cal and attendant care. There was thus no denial of due process of law as alleged in the first cause of action.
 

 The complaint indicates that the action arises under the Fifth and Fourteenth Amendments to the Constitution of the United States and title 42 of the United States Code sections 1343,
 
 [4]
 
 1983, 1985 and 1986. Precisely stated, causes of action do not arise under the Fifth and Fourteenth Amendments as such. A deprivation of a federally protected right under these Amendments may, however, give rise to a cause of action under the federal Civil Rights Act, 42 United States Code section 1981 et seq-.
 

 Section 1986 applies to someone (with the power to prevent it) neglecting to prevent a violation of section 1985 and is wholly dependent upon the existence of a cause of action under section 1985. There are no allegations in the complaint attempting to allege such a cause of action.
 

 Section 1983 provides liability where any person, under the color of any state law, deprives another person of any federally protected right.
 
 *675
 
 Under this section would fall a deprivation of due process, had such been shown by the pleading.
 

 Section 1985 is limited in scope in that the separate subsections provide redress for three types of wrongs. Subsections (1) and (2) are patently not applicable to this case. Subsection (3) provides for liability of persons who conspire to deprive a person of the equal protection of the law. It is limited to the equal protection right and does not provide liability for any conspiracy relating to deprivation of any other federally protected rights. Specifically, it does not apply to deprivation of due process. (See
 
 Jennings
 
 v.
 
 Nester, supra,
 
 217 F.2d at p. 154, which, after analysis of the relationship between sections 1983 and 1985, states: “Therefore, the Act creates a cause of action for conspiracy to deny equal protection but not for a conspiracy to deny due process.”)
 

 Neither are there sufficient allegations to constitute a cause of action for conspiracy to deny equal protection of the law. Other than the conclusionary assertions that the acts complained of constituted a denial of equal protection, there are no facts alleged which indicate a denial of equal protection. Such facts must be alleged. (See
 
 Waits
 
 v.
 
 McGowan
 
 (3d Cir. 1975) 516 F.2d 203, 208.) In
 
 Maniaci
 
 v.
 
 Warren
 
 (W.D.Wis. 1970) 314 F.Supp. 853, 857, the court pointed out that while a plaintiff could plead a conspiracy violation under section 1985 without pleading evidence of meetings, he
 
 must
 
 enumerate sufficient overt acts in furtherance of the alleged conspiracy—and also allege a “purposeful intent to discriminate.” No such allegations appear in the case before us.
 

 In short, we have concluded that not only is there no equal protection question under section 1985, there can be no conspiracy. Brundage is entitled to judicial immunity and the State of California, of course, is no more liable than the County of Butte in a civil rights action. Mitzel cannot conspire with herself and she cannot be held for conspiring with persons who are immune. (See
 
 Maniaci
 
 v.
 
 Warren, supra,
 
 314 F.Supp. at pp. 857-858;
 
 Waits
 
 v.
 
 McGowan, supra,
 
 516 F.2d at p. 205;
 
 Stambler
 
 v.
 
 Dillon
 
 (S.D.N.Y. 1968) 288 F.Supp. 646, 649.)
 

 The judgment is affirmed.
 

 Puglia, P. J., and Paras, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied September 14, 1978.
 

 [1]
 

 The principal section in the act (§ 1983) provided as follows: “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.”
 

 [2]
 

 We are aware of the recent case of
 
 Monell
 
 v.
 
 Department of Social Services of the City of New York
 
 (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018], which overrules
 
 Monroev. Pape, supra,
 
 (and its progeny) in part.
 
 Monell
 
 holds a municipality or other
 
 local governmental
 
 unit can be a “person” and subject to suit under the act where the conduct complained of implements or executes a policy statement, ordinance, regulation or decision officially adopted or promulgated as public policy, or is part of a “custom.”
 

 [3]
 

 The claims were rejected by the state on June 10, 1976. The original complaint was filed in December 1976.
 

 [4]
 

 There is no section 1343 in title 42 of the United States Code. The reference is probably meant to be section 1343 of title 28, re jurisdiction of courts.