**Thomas KRUEGER, By and Through his Guardian, Erika KRUEGER; Joanna Krueger, Plaintiffs–Appellants,**

v.

**MAMMOTH MOUNTAIN SKI AREA, INC., Squaw Valley Ski Corporation, and Bryant Haswell, Defendants–Appellees.**

Nos. 87–2533, 88–1711.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1989.

Decided April 24, 1989.

Victoria J. De Goff, De Goff and Sherman, Berkeley, Cal., Ronald H. Wecht, Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link, San Francisco, Cal., for plaintiffs-appellants.

James C. Hyde, Popelka, Allard, McCowan, and Jones, San Jose, Cal., for defendants-appellees.

Before C. CHOY, SNEED and
NOONAN, Circuit Judges.

CHOY, Circuit Judge:

Thomas Krueger, through his guardian
Erika Krueger, sued Squaw Valley Ski Corporation for negligence. Krueger's wife,
Joanna, joined the suit alleging loss of consortium. The case is properly in federal
court because of diversity of citizenship.
California substantive law applies.

Krueger was injured while skiing at
Mammoth Mountain, when Bryant Haswell,
a member of the Squaw Valley Ski Team,
collided with him. Krueger claimed that
Squaw Valley was liable for his injuries
under a theory of respondeat superior because Haswell was acting as an agent of
Squaw Valley at the time of the accident.

The district court granted summary
judgment for Squaw Valley. The court
found that because members of the ski
team were not agents under California law,
respondeat superior liability would not attach. However, in negligence cases, invocation of the rule of respondeat superior
does not depend upon agency. Respondeat
superior liability may be invoked upon the
finding of a "master-servant" relationship.
Whether this relationship exists is a question of fact left for the trier of fact. We
therefore reverse and remand for trial.

## DISCUSSION

■ The single issue on appeal is whether a relationship existed between Bryant
Haswell and Squaw Valley which would
justify the invocation of the rule of respondeat superior. In negligence cases, respon-

deat superior liability is properly imposed
when the tortfeasor was the "servant" of
the party against whom liability is sought.
*Prosser and Keeton on Torts* § 70 (5th
ed.1984); *Restatement (Second) of Agency*
§ 219 (1958).

The *Restatement* defines a servant as a
person employed to perform services for
another and who is subject to the other's
control while performing those services.
*Restatement (Second) of Agency* § 220(1).
Generally, the terms "master-servant" are
considered synonymous with "employer-employee." *See id.* § 220, comment g.
However, a relationship may be one of
"master-servant" without being a traditional employment relationship. The term
"employed" is not confined to business employment but also may include more informal relationships.[1] *Id.* § 220, comment b.
Conversely, a more traditional business employment relationship may not give rise to
respondeat superior liability if the employer does not exercise extensive control over
the employee's actions.[2] Renumeration is
not essential to finding a "master-servant"
relationship. *See Key Ins. Exchange v.
Washington,* 7 Cal.App.3d 209, 86 Cal.
Rptr. 542, 544 (1970); *Chavez v. Sprague,*
209 Cal.App.2d 101, 25 Cal.Rptr. 603, 609–
10 (1962); *Bonetti v. Double Play Tavern,*
126 Cal.App.2d Supp. 848, 274 P.2d 751, 753
(1954). The essential element is the "master's" degree of control over the party providing the service. *Washington,* 86 Cal.
Rptr. at 544; *Housewright v. Pacific Far
East Line, Inc.,* 229 Cal.App.2d 259, 40
Cal.Rptr. 208, 212 (1964); *Chavez,* 25 Cal.
Rptr. at 610; *Bonetti,* 274 P.2d at 753.

■ The *Restatement* adopts a flexible ten-factor test to determine whether
there is sufficient control so that the person providing services is a servant.[3] The

---

1. For example, an automobile owner may be considered an employer and may be held liable for a friend's negligence in repairing the owner's car if the repair is done under the owner's control. *Restatement,* § 220, comment b.

2. For example, people who work at home on "piece work" and who choose their own hours are employees but are not servants for the purpose of respondeat superior liability. *Restatement,* § 220(1), comment g.

3. § 220 Definition of servant.
    (2) In determining whether one acting for another is a servant ... the following matters of fact, among others, are considered:
    (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
    (b) whether or not the one employed is engaged in a distinct occupation or business;

*Restatement* test has been endorsed by California courts. *Townsend v. State of California,* 191 Cal.App.3d 1530, 237 Cal. Rptr. 146, 148 (1987); *Housewright,* 40 Cal. Rptr. at 212–13. If it is clear from application of this test that a master-servant relationship exists, the determination is made by the court; otherwise application of the test is left to the jury. *Restatement* § 220, comment c. Prosser also endorses the view that the question of master-servant liability is best left to a jury. Prosser states that whether or not a person is a servant for the purpose of invoking respondeat superior depends on whether the community would view the tortfeasor to be the other party's servant. *Prosser and Keeton on Torts* § 70 at 501 (5th ed.1984).

In this case, it is unclear whether Haswell's relationship with Squaw Valley is such that the community would view him as Squaw Valley's servant. Squaw Valley and Haswell did not have a traditional employment relationship. Haswell was not on Squaw Valley's payroll and did not perform a traditional job for Squaw Valley. However, Haswell did perform services for Squaw Valley by skiing on their team. First, Squaw Valley derived a financial benefit from having good skiers on their team. The Ski Team's victories generated publicity which could enhance Squaw Valley's reputation and draw skiers to its slopes. Second, as part of his duties as a ski team member, Haswell did "course maintenance." This maintenance was required by Squaw Valley of all its Ski Team members, was directed by Squaw Valley, and benefited the entire team by making the course safer. The accident occurred while Haswell was doing this maintenance.

In addition, while Haswell did not receive a paycheck for the services he performed for Squaw Valley, he was "paid" for representing Squaw Valley. In exchange for agreeing to represent Squaw Valley in competitions, Haswell was given the services of Squaw Valley's coaches and the use of Squaw Valley facilities.[4] Thus, while Haswell was not a traditional "employee" of Squaw Valley, a jury could find that he was "employed" in the sense required by the *Restatement* in order to find a master-servant relationship.

However, the record before us is incomplete about many of the facts which would establish the extent of the control exercised by Squaw Valley. We do not know how much supervision was given to Haswell and the other skiers in performing course maintenance. *Id.* § 220(1)(a). It is not clear whether Haswell would have been required to do course maintenance if he had entered the competition individually rather than as a member of the team. *Id.* § 220(1)(c). It is arguable whether entering ski team members in races or maintaining race courses at other resorts are "a part of the regular business" of Squaw Valley. *Id.* § 220(1)(h).

Thus, it cannot be said as a matter of law that Haswell was acting as Squaw Valley's servant at the time of the accident. It is "for the triers of fact to determine whether or not there is a sufficient group of favor-

(c) the kind of occupation, with reference to whether, in the locality, the work is usually under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work performed is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

4. Squaw Valley argues that these coaching services and the use of facilities can not be considered renumeration for Haswell's efforts because the majority of the members of the team paid for these services and this use. Squaw Valley contends that Haswell was more analogous to a student on a scholarship than an employee. However, this argument is unpersuasive. Squaw Valley cannot assume the attributes of a university to avoid liability. It is a profit-making enterprise, not an educational institution; and it derived an economic benefit from its Ski Team as explained above.

able factors to establish the [master-servant] relation." *Restatement* § 220(1), comment c. The jury must apply the *Restatement* factors in order to determine whether Squaw Valley had sufficient physical control over Haswell's actions to warrant the finding of a master-servant relationship.

REVERSED and REMANDED.