**Wayne A. WHITE, Plaintiff–Appellant,**

v.

**Steven GALVIN, Defendant–Appellee.**

No. 53A01–8712–CV–00309.

Court of Appeals of Indiana,
First District.

June 21, 1988.

Wayne A. White, Westville, pro se.

James R. Trulock, II, Deputy Co. Atty., Bloomington, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Wayne A. White (White), appeals, pro se, a judgment entered by the Monroe Superior Court III dismissing his legal malpractice action filed against defendant-appellee, Steven Galvin (Galvin).

We reverse.

## STATEMENT OF THE FACTS

On August 6, 1987, White filed a legal malpractice action against Galvin alleging that Galvin had been appointed by the trial court and represented him in a criminal case in 1985. He claimed that because of Galvin's gross negligence he was convicted and suffered damages in the sum of $400,-000.00.

Galvin filed an Ind. Rules of Procedure, Trial Rule 12(B)(6) motion to dismiss supported by affidavits in which he claimed that he had been sued individually in his capacity as a court appointed deputy public defender, but notice had not been given to the Board of County Commissioners of Monroe County as required by IND. CODE 34–4–16.5–7 of the Tort Claims Act. Failure to give notice was not denied by White, and on that basis, therefore, the trial court sustained the motion and White's malpractice case was dismissed.

White raises three issues on appeal. Because of our decision on Issue II, however, the other two issues are no longer material and we shall not address them. In Issue II White argues that a public defender is not a public employee as defined in the Tort Claims Act, and therefore, the procedures and preconditions of notice set forth therein are inapplicable to a suit against a public defender individually. The concept posed in this issue has broad implications beyond the mere matter of notice. If a public defender is not a public employee under the Tort Claims Act, then a serious question is posed as to whether the public body would be vicariously liable for legal malpractice committed by him. Further questions are posed as to whether the public body would be required to defend or pay any judgment

rendered where the public defender was sued alone without joining the public body. *See* IND. CODE 34–4–16.5–5. These latter matters are not before us and we make no decision on them. We merely point out the ramifications of the problems before us.

The question here was presented in a T.R. 12(B)(6) motion accompanied by affidavits. Therefore, it shall be treated as a motion for summary judgment. T.R. 12(B)(8). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). Here the question presented is purely a matter of law.

## DISCUSSION AND DECISION

IND. CODE 34–4–16.5–7 requires that any claim in tort against a political subdivision is barred unless notice of the claim is filed with the governing body within 180 days after the loss occurs. When the governmental employee is sued alone, failing to give the required notice is also fatal. *Poole v. Clase* (1985), Ind., 476 N.E.2d 828.

The question presented here is whether a public defender is an employee or public employee within the meaning of the Tort Claims Act. IND. CODE 34–4–16.5–2(b) states:

> "Employee" and "public employee" means a person presently or formerly *acting on behalf of a governmental entity* whether temporarily or permanently or with or without compensation, including members of boards, committees, commissions, authorities and other instrumentalities or governmental entities, and elected public officials. However, the term does not include:
> (1) an independent contractor; or
> (2) an agent or employee of an independent contractor;
> except an attorney who performs services for the state or county department of public welfare as an independent contractor. (Our emphasis.)

White relies totally upon *Polk County v. Dodson* (1981), 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509. In claiming that he was an employee of Monroe County, Galvin cites only IND. CODE 34–4–16.5–2(b). Our research has not revealed any Indiana cases which are helpful. We are of the opinion that the rationale of *Polk County* is persuasive and should be followed here. We will, therefore, analyze it in careful detail.

In that case Russell R. Dodson (Dodson) brought an action in federal court under 42 U.S.C. Sec. 1983 against the Polk County, Iowa Public Defender, Martha Shepard (Shepard). The public defender's office had been created and fully funded by the county. Full-time salaried lawyers handled 2,500 cases per year for the office which was administered by a salaried lawyer director. To establish that the public defender acted under color of state law, Dodson relied upon the fact that Shepard was employed by the county, paid by the county, and was under the direction of the county which had established procedures which Shepard was bound to follow. The court first noted that a person was acting under the color of state law only when acting under power "... possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law." 454 U.S. at 317–18, 102 S.Ct. at 449.

In its analysis, paraphrased by us, the court continued, stating that representation of an indigent entails functions and obligations in no way dependent upon state authority. The public defender is the accused's lawyer which is, except for the source of payment, a relationship that exists between any lawyer and client. That is, he is a personal counselor and advocate. The fact that a lawyer is an officer of the court does not make him an actor under color of state law, but to the contrary, the defense lawyer is an adversary to the state's interest, advancing only the individual interests of his client. Essentially, therefore, it is a private function traditionally filled by retained counsel for which the authority of the state is not needed. *Id.* at 318–19, 102 S.Ct. at 449–50.

The court rejected the argument that because the public defender was paid by a governmental unit, he was subject to the

supervision of the state and its representatives whose interests were not related to the indigent defendant. Although administrative decisions may influence the way a public defender works, his case load, and the quality of his library, he is not a servant of an administrative superior. Under the cannons of ethics, a lawyer shall not permit a person who recommends, employs or pays him to regulate or direct his professional judgment. Even under constitutional mandates a defense lawyer is free from state control.

In a concurring opinion Chief Justice Burger, noting that the role of government in providing defense counsel is very limited, emphasized that independence from governmental control in the performance of the assigned task is the crucial element.

The court concluded that a public defender does not act under the color of state law and dismissed Dodson's 1983 action against Shepard.[1]

As shown above the definition section of the Tort Claims Act, IND. CODE 34-4-16.-5-2(b) defines an employee as a person acting on behalf of a governmental entity. We see little difference between that definition and acting under color of state law. As in *Polk County*, Galvin was hired and paid by the public defender's office created and funded by Monroe County. The professional acts for which he was sued did not concern any interest of Monroe County, nor were they on the County's behalf. To the contrary, as a defense lawyer for White, Galvin was an adversary to the governmental body. As explained in *Polk County* he was not professionally in any way under the direction and control of any governmental agency. Control, or the right to control, is a precondition necessary to establish vicarious liability in tort. He performed his duties as White's lawyer, not as the state's or Monroe County's lawyer. His professional status was exactly the same as any attorney-client relationship where the lawyer is privately retained. The only connection Monroe County had

was in payment. It did not even control the appointment, for the court performed that function. Therefore, for the purposes of the Tort Claims Act, Galvin was not an employee of Monroe County, and notice to that body was not a precondition to bringing suit against Galvin personally.

For these reasons this cause is reversed and the trial court is ordered to overrule the motion to dismiss.

Judgment reversed.

RATLIFF, C.J., concurs.

ROBERTSON, J. dissents with opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from the majority opinion. Article 1, § 12, of the Constitution of Indiana requires that "Justice shall be administered freely." It has been determined that the responsibility falls to the judiciary to provide counsel for indigents.

It follows therefore that where one who is without means is charged with crime, the question of whether he shall have counsel appointed for him has not been left to the discretion of the court or the Legislature. It has been determined by the people in their Constitutions, national and state, that he shall have counsel, and that there can be no legal prosecution of the charge against him unless and until counsel is provided for him. The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties. In other words, they have inherent power to do everything that is necessary to carry out the purpose of their creation.

---

1. In *Polk County* a large number of cases are cited by the court in its analysis of the problem, both those supporting the court's view and those opposing it. Further, Justice Blackman filed a lengthy dissenting opinion. No attempt will be made by us to either cite or analyze those authorities, but the reader is directed to that case if further inquiry is desired.

*Knox County Council v. State ex rel McCormick* (1940), 217 Ind. 493, 29 N.E.2d 405 at 407, 408.

The purpose of the foregoing is to emphasize the highest mandate possible under our form of government and to recognize the unique function entrusted to the judiciary to insure representation of indigents who are charged with crimes.

It is appropriate next to examine the issue of whether, within the context of ruling on a summary judgment question the public defender is a governmental employee as contemplated by the Indiana Tort Claims Act.

First, it is my opinion that *Polk County v. Dodson* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed. 509 (1981) is not dispositive in this case. In *Polk County,* the question was one of whether a public defender acted under color of state law as contemplated by a civil rights action brought under 42 U.S.C. § 1983. The question here is whether a court-appointed counsel for an indigent is an employee for the purpose of applying the Indiana Tort Claims Act.

I.C. 34–4–16.5–2(b) reads:

"Employee" and "public employee" means a person presently or formerly acting on behalf of a governmental entity whether temporarily or permanently or with or without compensation, including members of boards, committees, commissions, authorities and other instrumentalities or governmental entities, and elected public officials. However, the term does not include:

(1) an independent contractor; or

(2) an agent or employee of an independent contractor;

except an attorney who performs services for the state or county department of public welfare as an independent contractor.

For the purposes of the fact situation present in this appeal, the critical factor to be considered is, as the majority opinion correctly observes, the degree of control which is exercised over counsel for indigent persons. Generally speaking, in the absence of the right to prescribe exactly how a job is to be done a master-servant relationship does not exist. *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E. 2d 316.

If, as in *Polk County* and the traditional master-servant cases as represented by *Hale,* a narrow application is given to the right to control factor a reasonable argument can be made that one who is engaged in the practice of law could *never* be an employee. We are not dealing with a situation where a painting contractor, as an example, can order a painter who works for him when and where to start and stop work, what color to use and how many coats to apply, and whether to brush, roll, or spray the paint. Instead, we must look at the nature of the practice of law and, to a large extent, what a lawyer can or cannot do. First, and perhaps the most obvious, is the fact that one who ethically practices law has constraints in place by way of the Rules of Professional Conduct. That being the case, the employer of a lawyer does not have as much control, when compared to the painter, over his employee in that he cannot validly require the lawyer to violate the rules of professional conduct. In a like manner, the employer of a lawyer cannot dictate what the end result of any legal problem will be. It is the nature of the profession, for the most part, to advise as to options and probabilities. Even so, there is no guarantee of exactness and certainty of result on many occasions.

Without belaboring the point too much more, in the case of indigent counsel who is paid by the county, the Rules of Professional Conduct, Rule 1.8(f) reads:

(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

\*    \*    \*    \*    \*    \*

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship;

\*    \*    \*    \*    \*    \*

Independent professional judgment and client loyalty are the very fabric of the practice of law. One cannot properly practice law without adhering to these over-

riding considerations. I am of the opinion it is unjust and unrealistic to require an adherence to these rules on the one hand and then say a lawyer cannot be an employee because of them. To do so ignores the unique character of the profession.

At the very least, if the trial court's judgment is to be overturned, it should be done on the basis that a genuine issue of material fact exists.

However, I believe sufficient authority exists to sustain the trial court's judgment.

In the case of *Ayres v. Indian Heights Volunteer Fire Dept.* (1985), Ind.App., 482 N.E.2d 732, a suit was filed by a property owner against the volunteer fire department and the township trustee for alleged negligent fire fighting. The Second District of this court found on appeal, among other things, that the volunteer fire department was an independent contractor and not entitled to the protection afforded by the Indiana Tort Claims Act. In addressing the question of an independent contractor it was stated:

> However, if the volunteer fire department is a corporation which owns its own property, buildings and equipment, pays its own nonvolunteer employees and enacts its own rules and regulations, it is not a governmental agency. (Citations omitted.)

482 N.E.2d at 740.

This contention was rejected on transfer by our supreme court. *Ayres v. Indian Heights Vol. Fire Dept.* (1986), Ind., 493 N.E.2d 1229. After an examination of various statutory methods which establish fire fighting capability for governmental units, Justice Pivarnik concluded:

> It is clearly the intention of the Legislature to recognize volunteer fire departments as instrumentalities of local government regardless of which of the five methods used. The provision for creating the fire department in the township and the authorizing of the use of volunteer firefighters made up of citizens of the community was obviously meant to provide a service pursuant to

an exclusive governmental function. The Indian Heights Volunteer Fire Department was so constituted. It was composed of volunteer citizens of the township to provide a specific service to that specific geographic area pursuant to statutory authorization and at the behest of the elected township authority. The contract price of $27,500 a year could reasonably be determined to be nominal in amount and to cover those obligations required in Title 36, Art. 8, Ch. 12. This fire department was therefore an instrumentality of local government and was protected by the Indiana Tort Claim Act along with the township that employed it.

\* \* \* \* \* \*

> The Indian Heights Volunteer Fire Department, Inc., is not an independent contractor as that term is intended in the Indiana Tort Claims Act, Ind.Code § 34–4–16.5–2.

493 N.E.2d at 1237.

The same logic applies to the fact situation in this case. The relationship between the township trustee and the volunteer fire department parallels that of a court-appointed lawyer and the court who appoints him for the indigent. Both the trustee and the court are acting pursuant to a mandate (statutes in the trustee's case and the Constitution of Indiana in the trial court's case); the trustee and the trial court pay those who provide the required service; the trustee told the fire department to fight fires when they occur and the trial court tells counsel for the indigent to represent that person; in the performance of fighting fires on-site judgments were left to the fire department and not the trustee[1] while counsel for the indigent makes those decisions on how to best represent his client without being subjected to the specific control of the court; and, the volunteer fire department and counsel for indigents fulfill a vital governmental function. Perhaps the most significant part of the supreme court's holding is that control, as relied upon in the majority opinion, is of minimal consequence, if any.

1. *See* 482 N.E.2d at 740.

I am of the further opinion that policy reasons require affirming the trial court. The majority opinion issues an invitation to the filing of vexatious and harassing lawsuits. It casts a chilling effect on securing counsel for indigents which is exacerbated in the rural counties of this state where the pool of attorneys willing to take pauper cases is already small. It places virtually every lawyer in Indiana who works for a governmental unit at a higher degree of risk than ever before.[2] In sum, to the extent policy reasons are applicable, they indicate the trial court should be affirmed.

I would affirm the trial court's decision because there has been no demonstration in this appeal that counsel for indigents are intended to be excluded as employees as defined in I.C. 34–4–16.5–2(b), the supreme court decision in *Ayres, supra*, presents valid and binding authority to affirm, and policy reasons support the trial court's decision.

2. The majority opinion could also have an adverse ripple effect insofar as physicians and engineers who work for a governmental entity are concerned.