[No. H007557. Sixth Dist. May 23, 1991.]

BILLY LEO BRIGGS, Plaintiff and Appellant, v.
MICHAEL LAWRENCE et al., Defendants and Respondents.

**COUNSEL**

Robert J. Filippi and Gordon R. Johnston for Plaintiff and Appellant.

Ralph R. Kuchler, County Counsel, and Albert H. Maldonado, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Billy Leo Briggs sued the Public Defender of Monterey County (Michael Lawrence) and a deputy public defender (Arthur Kaufmann) for attorney malpractice. The defendants' general demurrers and motions for judgment on the pleadings were granted without leave to amend. Briggs appeals from the trial court's order, which we shall treat as an appealable final judgment for defendants. (Cf., e.g., *People* ex rel. *Rominger* v. *County of Trinity* (1983) 147 Cal.App.3d 655, 658 [195 Cal.Rptr. 186].) Briggs did not plead that he had filed a claim against Monterey County under the California Tort Claims Act (Gov. Code, § 810 et seq.), and he has acknowledged that he did not file such a claim. The dispositive question is whether he was required to do so. The answer depends on whether Lawrence and Kaufmann, as salaried full-time public defenders engaged in representing an assigned client, were public employees acting in the scope of their employment or, instead, should be regarded as independent contractors: If they were public employees, Briggs was required to file a claim; if they were to be regarded as independent contractors, he was not. We shall conclude that salaried full-time public defenders representing assigned clients are public employees acting in the scope of their employment and therefore that the judgment must be affirmed.

Briggs had been tried for murder and acquitted. Lawrence and Kaufmann had represented Briggs, under court appointment, at trial. After trial the superior court conducted a series of hearings to determine whether Briggs should be required to reimburse any portion of the cost of his defense. (Pen. Code, § 987.8. subds. (b), (e).) Lawrence and Kaufmann appeared at the hearings; Briggs was not otherwise represented. The court ordered Briggs to reimburse the county nearly $73,000 for the services and costs of the public defender's office at trial. Private counsel then entered the case for Briggs and moved to vacate the reimbursement order. On August 14, 1989, the trial court denied the new motion, adding to its order a "special finding that . . . Lawrence, . . . [Kaufmann], and the Public Defender's office, ha[ve] adequately represented Mr. Briggs in all proceedings, including these post-trial proceedings."

Ten months later Briggs filed his action against Lawrence and Kaufmann, alleging malpractice in the reimbursement proceedings. The defendants promptly demurred generally, and also moved for judgment on the pleadings, on grounds the complaint did not allege facts sufficient to constitute malpractice, that the August 1989 order collaterally estopped Briggs's malpractice claim, and that the complaint did not allege Briggs had filed a claim against the public entity under the Tort Claims Act. The trial court took

judicial notice of the August 1989 order, sustained the demurrers on the ground "the Complaint fails to state facts to constitute a Cause of Action," and granted the motions for judgment on the pleadings.

■ The defendants' demurrers and motions for judgment on the pleadings were functionally equivalent: Each tested the allegations of the complaint, supplemented by any relevant matter of which the trial court could take judicial notice, to determine whether Briggs had stated any legally cognizable claim for relief against the defendants. Because the inquiry is purely one of law, on review we apply the same standards. (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738]; *Barker* v. *Hull* (1987) 191 Cal.App.3d 221, 224 [236 Cal.Rptr. 285]; *Stockton Newspapers, Inc.* v. *Redevelopment Agency* (1985) 171 Cal.App.3d 95, 99 [214 Cal.Rptr. 561]; cf. *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].) The extensive recitations in the parties' briefs of facts and circumstances neither alleged in the complaint nor subject to judicial notice, and their extensive arguments based on those facts and circumstances, are not relevant to our inquiry. The question before us is not whether Briggs could *prove* a legally cognizable claim, but only whether he has *pleaded* one.

The complaint sufficiently implies that Lawrence and Kaufmann are attorneys and alleges in pertinent part that after the acquittal they represented Briggs at the initial hearing to determine Briggs's "current ability to reimburse the Public Defender for the costs of his defense . . . ," and that in the reimbursement proceedings they caused Briggs various economic injuries by breaching their professional duties to him in specified ways. Without more these allegations, "liberally construed, with a view to substantial justice between the parties" (Code Civ. Proc., § 452), would arguably suffice to state a cause of action for attorney malpractice against the defendants. (Cf. generally *Day* v. *Rosenthal* (1985) 170 Cal.App.3d 1125, 1143, 1147 [217 Cal.Rptr. 89]; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 542, 566, pp. 575-576, 605-606.)

The defendants do not and cannot assert that as public defenders they would be individually immune from liability for malpractice. ■ In California a private attorney will be liable to the client for his or her malpractice in civil or criminal matters. (1 Witkin, Cal. Procedure, *supra*, Attorneys, § 228, pp. 257-258; reliability for malpractice in criminal matters cf. *Holliday* v. *Jones* (1989) 215 Cal.App.3d 102 [264 Cal.Rptr. 448]; *Martin* v. *Hall* (1971) 20 Cal.App.3d 414 [97 Cal.Rptr. 730]; Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* (1974) 21 UCLA L.Rev. 1191.) If (as Briggs asserts) the defendants should be deemed to have acted, at relevant times, as independent contractors paid by

the county but in professional privity with Briggs, then their liability would be essentially that of private attorneys. If (as the defendants themselves assert) the defendants were simply public employees acting in the scope of their employment, that status would not afford them immunity as individuals: Subject to statutory exceptions no party has invoked, in California "a public employee is liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a).)

The defendants asserted in the trial court, and reiterate here, that the complaint nevertheless fails to state a cause of action against them, because Briggs was collaterally estopped from asserting they had breached their professional duties, and, alternatively, because the complaint contained no allegation of compliance with Tort Claims Act requirements.

The record does not support the defendants' collateral estoppel argument. But because Briggs did not, and cannot, allege that he filed a claim under the Tort Claims Act, his complaint is fatally defective and the judgment must be affirmed.

### 1. *Collateral Estoppel*

The collateral-estoppel argument is based on the finding, in the trial court's August 1989 order in the reimbursement proceedings, that the defendants had "adequately represented Mr. Briggs in all proceedings . . . ." The defendants argue this finding forecloses any assertion by Briggs in *this* proceeding that either defendant's representation in the reimbursement proceeding had *not* been adequate.

The operation of collateral estoppel to avoid unnecessary relitigation of an issue previously resolved is well documented. (7 Witkin, Cal. Procedure, *supra*, Judgment, § 253, pp. 691-692.) ■ The estoppel depends on several preconditions, of which two are significant here: First, the issue must have been actually litigated in the previous action, which is to say it must have been " '*properly raised,* by the pleadings or otherwise, and . . . submitted for determination, and . . . *determined* . . . .' " (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321], quoting from Rest.2d, Judgments (1982) § 27, com. d, at p. 255, with italics added; cf. *Betyar* v. *Pierce* (1988) 205 Cal.App.3d 1250, 1254-1255.) Second, the issue thus litigated must be identical to the issue to which the estoppel is to apply. (*People* v. *Sims, supra,* 32 Cal.3d at pp. 484, 485; 7 Witkin, Cal. Procedure, *supra*, Judgment, § 254, pp. 693-694.)

On the basis of the showing of record before us, we are not satisfied the August 1989 finding was either litigated in the previous action or

identical to the issue of the defendants' alleged breach of various professional duties in this proceeding. So far as the record reflects, the trial court took judicial notice only of the two-page August 1989 order itself, which falls far short of establishing either precondition. No moving papers or other "pleadings" in the reimbursement proceeding appear in the record. Even were we to assume that the court could and did take notice of the oral proceedings at several hearings (represented in the record only by unauthenticated photocopies of hearing transcripts), we could not conclude that the quality of the defendants' performance in the reimbursement proceeding was relevant to, or properly raised or submitted for determination in, that proceeding, or (if so) that the determination extended to all aspects of the several allegations of professional dereliction in Briggs's complaint in this action.

## 2. *Claim Requirement*

 Whether Briggs was required to file a Tort Claims Act claim depends on whether, on the facts he pleaded, the defendants were public employees acting in the scope of their employment.

The Tort Claims Act provides that "[a] public entity may . . . be sued," but that with specified exceptions "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." (Gov. Code, §§ 945, 945.4; cf. *id.* §§ 905, 905.2, 910 et seq.) Where required, the claim must be filed within six months after accrual of the cause of action; leave to file a claim after the six-month deadline must be sought within one year after accrual of the cause of action. (Gov. Code, §§ 911.2, 911.4.) The purpose of the claim procedure is said to be to give the public entity an opportunity for early investigation and thus to settle just claims before suit, to defend unjust claims, and to correct conditions or practices which gave rise to the claim. (Recommendations Relating to Sovereign Immunity, No. 2, Claims, Actions and Judgments Against Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 1008-1009; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 5.6, pp. 435-436.)

Employees of public entities may be sued as individuals (cf. Gov. Code, § 950), and the Tort Claims Act incorporates no requirement that a claim be filed against the *employee*. If the injury on which suit was based arose out of an act or omission within the scope of the employee's employment, the employee may tender defense to, and may thereupon become entitled to indemnification by, the public-entity employer. (Gov. Code, §§ 825-825.6;

Van Alstyne, *supra*, § 5.89, pp. 593-597.) The drafters of the Tort Claims Act perceived that unless some kind of a claim procedure were made a precondition to suit against individual public employees, the protection provided by the requirement of a claim against the *entity* would be "largely negate[d]": "[I]f an action against the public entity were barred because a claim was not presented to the public entity . . . , the claimant could, nevertheless, bring an action against the employee involved and recover a judgment which the public entity ordinarily would then be required to pay" without having had the opportunities for early investigation, prompt settlement, adequate defense, and remedial action the claim procedure was intended to provide. (Recommendations Relating to Sovereign Immunity, *supra*, p. 1016.) Accordingly the Legislature included in the Tort Claims Act what amounts to a requirement that (with exceptions not relevant here) one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment have filed a claim against the *public-entity employer* pursuant to the procedure for claims against public entities. (Gov. Code, §§ 950.2, 950.6, subd. (a), 911.2, 945.4; Van Alstyne, *supra*, §§ 5.63-5.68, pp. 548-556.) ▮ Failure to allege compliance renders the complaint in such an action subject to general demurrer. (Van Alstyne, *supra*, §§ 5.8, 5.63, pp. 437-438, 548; *Bohrer* v. *County of San Diego* (1980) 10 4 Cal.App.3d 155, 160 [163 Cal.Rptr. 419]; *Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 355 [138 Cal.Rptr. 20]; cf. *Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 671 [147 Cal.Rptr. 323].)

The complaint begins with an allegation that Lawrence and Kaufmann "are now and at all times mentioned herein were, duly appointed, employed, and acting as Public Defenders in and for the County of Monterey." The Tort Claims Act defines a public employee, tautologically, as "an employee of a public entity" (Gov. Code, § 811.4); an employee may be "an officer, . . . employee, or servant, whether or not compensated . . . ." (*Id.* § 810.2.) In the common sense of the words it uses, the complaint's first allegation says that the defendants were public employees acting in the scope of their employment. If so, then Briggs was obliged to comply with the claim requirements of the Tort Claims Act and to allege in his complaint that he had done so. He did not allege compliance. Nor did he seek leave to amend his complaint to do so (cf. *Bohrer* v. *County of San Diego, supra*, 104 Cal.App.3d at p. 160), and at oral argument he acknowledged that in fact he did not file a claim. He argues that under the allegations of the complaint he was not obliged to file a claim.

▮ Briggs appears to acknowledge that the defendants were employees of Monterey County for some purposes, and does not suggest that the defendants were not, at relevant times, acting within the scope of the duties the county was paying them to perform. His argument, narrowly, is that

notwithstanding the common sense of the first allegation of his complaint it is clear from the complaint as a whole that *in respects relevant to the asserted malpractice* the defendants were acting not as public employees but rather as something akin to independent contractors. The Tort Claims Act expressly excludes independent contractors from its definition of an employee (Gov. Code, § 810.2) and thus of a public employee. (*Id.* § 811.4.) Briggs relies on the premise that an employer "must have the right to complete control of the manner and method in which the work is performed." He argues that "absolute" control is "an essential characteristic of the employment relationship." Briggs asserts that the actions of a public defender as an attorney representing an assigned client must be guided solely by his or her professional duties to the client, and thus cannot be deemed subject to the public entity's control. (Cf. *In re Hough* (1944) 24 Cal.2d 522, 527-529 [150 P.2d 448].) Briggs would analogize a public defender engaged in such representation to a private attorney appointed from a panel, or engaged by special contract, to represent one or more criminal defendants, and would argue that such private attorneys are independent contractors to whom the claim requirements of the Tort Claims Act would not apply and therefore that the claim requirements should not apply to these defendants.

Briggs's argument encounters two difficulties.

The first is that by suggesting a public defender may be regarded as an employee for some purposes but must be treated as an independent contractor for others, Briggs overtaxes both concepts. The terms have been said to be antithetical (Rest.2d Agency, § 14 N, com. a, p. 80; cf. *id.* § 2, com. b, pp. 13-14; *Automatic Canteen Co.* v. *State Board of Equalization* (1965) 238 Cal.App.2d 372, 385 [47 Cal.Rptr. 848]): In the several cases that have analyzed the distinction for various purposes, the terms have been contrasted and the question has been whether the person who renders services is an employee *or* an independent contractor. (Cf., e.g., *Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946 [88 Cal.Rptr. 175, 471 P.2d 975] [unemployment insurance contributions]; *Germann* v. *Workers' Comp. Appeals Bd.* (1981) 123 Cal.App.3d 776, 782-783 [176 Cal.Rptr. 868] [workers' compensation coverage]; *Toyota Motor Sales U.S.A., Inc.* v. *Superior Court* (1990) 220 Cal.App.3d 864, 870, 871 [269 Cal.Rptr. 647] [respondeat superior].) The Tort Claims Act itself states the distinction categorically: " 'Employee' includes an officer, judicial officer . . . , employee, or servant, whether or not compensated, but does not include an independent contractor." (Gov. Code, § 810.2.)

Any attempt to subdivide what has traditionally been an all-or-nothing inquiry would inevitably tend to create problems of judicial administration. Assuming (upon Briggs's hypothesis) that a salaried public defender is a

county's employee for some purposes but its independent contractor when representing an assigned client, which status would govern the defender's claim for a work-related injury? His or her claim for unemployment benefits following termination? A third party's claim against the county for injuries negligently caused by the defender? Would the answer depend (as Briggs's argument suggests) on the nature of the functions the defender was performing at the time? Such an approach would raise difficult problems of defining and delimiting functions: What of the situation in which the defender injured himself or herself, or negligently injured a third person, while driving from the public defender's office to court, or walking along a courthouse corridor, to meet an assigned client?

It is conceivable that one individual could serve another person or entity as both employee and independent contractor: An example might be a clerical employee who agreed, for a separate consideration, to paint the employer's building on weekends. But for reasons we have suggested such a dual capacity should be found only in the exceptional case where the parties' intentions have been made plain and the functions are clearly defined and separated. No such clear separation has been pleaded here.

Briggs's second difficulty is that he relies too heavily on the factor of *control* of the public defender's representation of a given client.

In the first place Briggs appears to rely exclusively on the control factor: His argument is based on the premise that because the requisite degree of control of the attorney-client relationship was lacking, the defendants could not have been employees of the public entity. ■ Our Supreme Court characterized a similar approach as improper in *Tieberg* v. *Unemployment Ins. App. Bd., supra*, 2 Cal.3d at page 946, pointing out that although "[t]he right to control the means by which the work is accomplished is clearly the most significant test of the employment relationship" other factors, enumerated in the Restatement Second of Agency, should be considered as well. (*Id.* at p. 950; *Toyota Motor Sales U.S.A., Inc.* v. *Superior Court, supra*, 220 Cal.App.3d at p. 874.)

The Restatement defines a "servant" (generally equivalent to an employee) as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control. [¶] . . . In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered: [¶] (a) the extent of control which, by the agreement, the master may exercise over the details of the work; [¶] (b) whether or not the one employed is engaged in a distinct occupation or business; [¶] (c) the kind of occupation,

with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; [¶] (d) the skill required in the particular occupation; [¶] (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; [¶] (f) the length of time for which the person is employed; [¶] (g) the method of payment, whether by the time or by the job; [¶] (h) whether or not the work is a part of the regular business of the employer; [¶] (i) whether or not the parties believe they are creating the relation of master and servant; and [¶] (j) whether the principal is or is not in business." (Rest.2d Agency, § 220, pp. 485-486; cf. *Tieberg* v. *Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 950, fn. 4; *Toyota Motor Sales U.S.A., Inc.* v. *Superior Court*, *supra*, 220 Cal.App.3d at pp. 874-875.)

 It is clear, from the allegations of the complaint, matters subject to judicial notice, and sound inferences from one or the other, as well as from the parties' statements at oral argument, that the Monterey County Public Defender's office is analogous in relevant respects to similarly denominated offices in other California counties that have chosen to provide representation to indigent criminal defendants by assigning attorneys employed by the county rather than by contracting with private attorneys. Several conclusions relevant to the Restatement factors may be drawn:

(1) The defendants, although inferably licensed as attorneys, were not "engaged in a distinct occupation or business": They devoted their full-time to their duties as public defenders for Monterey County.

(2) The defendants were specialists. Defendant Lawrence was the public defender who presumably worked without supervision; defendant Kaufmann, as a deputy public defender, may have been in some degree supervised by Lawrence or by other attorneys in the office but would not have been supervised by county employees outside the public defender's office.

(3) The occupation obviously requires skill.

(4) Although "the factor of ownership of tools is of little importance where the service to be performed is an intellectual endeavor" (*Tieberg* v. *Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d 943, 954), such instrumentalities, tools, and workplaces (including even the courtrooms and jail visiting areas) as were necessary to the defendants' functions were provided by the county.

(5) The defendants were employed at the pleasure of the county, subject to termination on reasonable notice for performance deemed unsatisfactory.

(6) The defendants received salaries, calculated on the basis of time on the job and without reference to particular cases or clients and paid at regular intervals.

(7) The work of public defenders, in discharge of the public's constitutional duty to provide competent legal representation to indigent criminal defendants, is unquestionably part of the regular business of the county.

(8) The county and the defendants believed they were creating an employment relationship with many of its normal indicia: Exclusive right to the employee's service, reasonably regular work hours, provision of office space and facilities and clerical support, a range of employee benefits and perquisites.

(9) The county is unquestionably in business, albeit of a special kind, and as noted the provision of public defense services to indigent criminal defendants is a necessary part of that business.

The preponderance of these factors suggests an employment relationship. But many of them are simply special indicators of control (cf. *Tieberg* v. *Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 953), and all may be regarded as secondary to the control factor itself. (Cf. *id.* at p. 950; *Isenberg* v. *California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 39 [180 P.2d 11].)

Briggs's approach to the control factor itself is, we believe, both too narrow and too rigid.

■ It cannot be questioned that a public defender assigned to represent a client must consider the client's legitimate interests exclusively and must serve those interests energetically and skillfully, subject only to constraints of professionalism as an officer of the court and a member of the legal profession. ■ Within this narrow perspective it is no doubt true that the public defender is not subject to the county's control, at least insofar as any asserted control might conflict with the client's legitimate interests or with professional standards. But in a somewhat broader perspective devotion to the client's interests, energy, skill, and professionalism are exactly what the public defender has been employed to provide: The county in its own interest should insist on no less, and should be prepared to discipline or to discharge a public defender who does not meet these standards. In this broader perspective the county does exercise control over the public defender's representation of clients. As relevant to this case, it cannot be suggested that the county has no proper interest in, and cannot act to prevent, malprac-

tice by individual public defenders: The county can and should exercise a degree of control at hiring and by ongoing quality control to assure that its public defenders are providing competent and professional services.

Further, Briggs's insistence that the employment relationship requires "complete" or "absolute" control is far too rigid. Read together, the cases on which Briggs relies establish no more than that "complete" or "absolute" control will support a finding of an employment relationship. The cases do not support the proposition, essential to Briggs's position as he has stated it, that lack of complete or absolute control means there is *not* an employment relationship. To the contrary, "[i]t does not follow that because there is a certain amount of freedom inherent in the nature of the work one is called upon to do that one becomes an independent contractor rather than an employee. [Citation.]" (*Greenaway* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 49, 54-55 [74 Cal.Rptr. 452] [inheritance tax referee a county employee for workers' compensation purposes].)

We hold that a salaried full-time public defender engaged in representing an assigned client is a public employee acting in the scope of his or her employment within the meaning of the California Tort Claims Act. Our holding will require that a client who sues such a public defender for malpractice file, as a precondition to suit, a Tort Claims Act claim against the employing public agency. When filed, such a claim will serve the remedial purpose of the claim procedure by giving the entity prompt notice of its employee's asserted failure to provide competent and professional service.

We are aware that arguments similar to Briggs's have been persuasive to appellate courts in several other jurisdictions. (*White* v. *Galvin* (Ind. Ct. App. 1988) 524 N.E.2d 802, 803-804; *Windsor* v. *Gibson* (Fla. Dist. Ct. App. 1982) 424 So.2d 888, 889-890; *Reese* v. *Danforth* (1979) 486 Pa. 479, 484-486 [406 A.2d 735, 738-739; 6 A.L.R.4th 758, 762-764]; *Spring* v. *Constantino* (1975) 168 Conn. 563, 568-576 [362 A.2d 871, 875-879, 6 A.L.R.4th 758]; cf. Annot., Public Defender's Immunity From Liability for Malpractice (1981) 6 A.L.R.4th 774; Millich, *Public Defender Malpractice Liability in California* (1989) 11 Whittier L.Rev. 535, 536-537.) The question before the Indiana Court of Appeals in *White* v. *Galvin, supra,* was analogous to that before us, and the court concluded that the deputy public defender was not a county employee and therefore that notice to the county was not a precondition to suit against the defender personally. We respectfully disagree with the analysis of the majority, and find ourselves in agreement with the substance of the dissent, in *White* v. *Galvin.* In each of the remaining cases the practical issue, under local law, was whether the publicly compensated defense attorney was or was not to be wholly immune from liability for

asserted malpractice, and a determination that he or she was acting within the scope of employment as a public employee would have invoked immunity and left the client with no recourse. Our situation is different: In any event these defendants, as individuals, would not be immune from liability for malpractice. Here the practical issue has little or nothing to do with Briggs: It is whether the defendants may look to the public entity for defense and for indemnification. (Gov. Code, § 825; Millich, *supra*, 11 Whittier L.Rev. 535, 539-542.)

From our holding that a salaried public defender engaged in representing an assigned client is a public employee acting in the scope of his or her employment it follows that Briggs was required to file a claim against Monterey County, that his failure to allege he had done so rendered his complaint demurrable, and that his acknowledgment that he has not filed a claim (time to do so having expired) ratifies the trial court's denial of leave to amend the complaint once it had sustained the defendants' demurrer.

3. *Sanctions*

In their brief the defendants have asserted that Briggs's appeal was frivolous and that they should be awarded, as sanctions, the full costs of the services of the county counsel for representing them in this court.

Much of the defendants' argument appears directed to Briggs's assertion, underlying his unsuccessful motion to set aside the trial court's reimbursement order and necessarily implicit in his malpractice action, that he should not have been ordered to reimburse the county for the cost of his defense. The defendants argue that Briggs at one time consented to reimburse the county.

If the defendants are right, they must pursue whatever remedy they may have in some other proceeding. Our inherent power, codified in Code of Civil Procedure section 907, to protect the integrity of our procedures by imposing sanctions for flagrant misuse of them, is limited to a consideration whether the pending *appeal* "was frivolous or taken solely for delay . . . ." The appeal, as distinct from the underlying dispute, was addressed to a narrow procedural ruling. That Briggs has not prevailed in this court by no means establishes that his appeal was frivolous or dilatory. The pivotal issue he presented was important and (as the decisions contrary to ours in other jurisdictions may suggest) by no means easy. We cannot regard the appeal as frivolous.

The judgment is affirmed. The defendants' application for sanctions on appeal is denied. The defendants shall recover their ordinary costs on appeal.

Agliano, P. J., and Capaccioli, J., concurred.