Charles W. WRIGHT and Martha S. Wright, Appellants–Plaintiffs,

v.

Dawn R. ELSTON, Chief Public Defender, Clark County, Indiana, Appellee–Defendant.

No. 10A01–9806–CV–209.

Court of Appeals of Indiana.

Nov. 17, 1998.

---

1228

Charles W. Wright, Martha S. Wright, Pekin, Pro Se.

Ronald J. Semler, Stephenson Daly Morow & Kurnik, Indianapolis, for Appellee–Defendant.

## OPINION

MATTINGLY, Judge.

Charles W. Wright and Martha S. Wright[1] appeal the trial court's grant of summary judgment in favor of Dawn R. Elston (Elston). They raise the following issues:

1) whether the special judge had jurisdiction to hear the case;

2) whether the special judge was biased or prejudiced;

3) whether the trial court properly entered summary judgment for Elston based on the Wrights' failure to comply with the provisions of Indiana's Tort Claims Act; and

4) whether the trial court erred in finding their claim against Elston was barred by the principles of issue preclusion and res judicata. We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 25, 1995, Wright was charged with one count of intimidation and five counts of harassment. Wright insisted on defending himself *pro se*, even though Elston had been appointed his public defender. At trial, Elston was available as standby counsel to assist Wright if necessary. He did not make use of her assistance at trial. At that time, Elston was a full-time salaried employee of Clark County in her position as chief public defender.

On April 7, 1995, a jury found Wright guilty of one count of harassment and three counts of intimidation. He was sentenced on May 1, 1995. At that time, the trial court appointed Elston to assist Wright with his appeal, despite the fact that Wright had objected to Elston's appointment and had requested that a state public defender be appointed for him instead. On September 5, 1995, Elston filed a motion to withdraw as appellate counsel for Wright. Wright also moved for a change of public defender. The trial court denied both of these motions on September 28, 1995.

On September 21, 1995, the Wrights filed a *pro se* complaint against Elston, alleging she had committed acts of negligence and malpractice in her role as standby counsel during Wright's criminal trial. On September 29, 1995, the Wrights filed an amendment to their complaint, alleging that Elston had violated her duty as appointed appellate counsel by failing to visit Wright in prison and failing to file a motion to correct error. The regular trial court judge recused himself and sought appointment of a special judge from the Indiana Supreme Court. After the Supreme Court remanded the cause for appointment of a special judge pursuant to Ind. Trial Rule 79(H) and (I), Scott Miller was appointed to serve as special judge.

On November 17, 1995, Elston answered the Wrights' complaint against her and filed a motion to dismiss. On February 26, 1996, the Wrights submitted another amendment to their complaint generally setting forth additional factual allegations. On May 13, 1996, the Wrights filed a motion to withdraw their complaint against Elston. On November 25, 1996, the Wrights filed a motion for leave to submit another amended complaint

---

1. For the sake of clarity, we will refer to Charles Wright individually as "Wright" and to Charles Wright and Martha Wright collectively as "the Wrights".

to include additional allegations regarding Elston's actions as appellate counsel.

On December 26, 1996, the Wrights submitted a praecipe pursuant to T.R. 53.1, alleging that Judge Miller had failed to timely rule on their motions to amend. On February 28, 1997, Judge Miller notified the court that he refused to accept jurisdiction over the matter and requested that another special judge be appointed. The trial court appointed Curtis B. Eskew as special judge on March 7, 1997. However, Judge Eskew declined the appointment because of a conflict of interest stemming from a previous lawsuit by Wright against him. Roger Davis was then appointed special judge on March 17, 1997.

The Wrights submitted another amended complaint on March 18, 1997, alleging Elston had committed additional acts of malpractice in the handling of Wright's appeal by failing to file a meaningful brief. On May 5, 1997, Judge Davis appeared, assumed jurisdiction, and set all pending motions for hearing. At that time, Judge Davis was advised of the withdrawal of the case which occurred when the praecipe relating to Judge Miller's failure to rule on motions was filed with the Indiana Supreme Court. After confirming this fact with the administrator of the Supreme Court, Judge Davis announced that he had no jurisdiction and concluded the hearing.

On September 11, 1997, the Supreme Court issued an order finding that Judge Davis had jurisdiction over the case pursuant to local rule and confirming his appointment under T.R. 53.1. On October 20, 1997, Elston filed a motion for summary judgment addressed to all the claims set forth by the Wrights. On December 9, 1997, Judge Davis entered an order overruling various objections by the Wrights to his serving as special judge.

At a hearing on January 23, 1998, Judge Davis granted the Wrights' motion to dismiss their claims involving Elston's conduct as standby counsel at Wright's trial and granted their motion to file the amended complaint that Elston was negligent in failing to file an adequate appellate brief. At the conclusion of the hearing, the judge indicated he would grant Elston's motion for summary judgment. The trial court entered findings of facts and conclusions of law on January 29, 1998.[2] The Wrights instituted the instant *pro se* appeal.

## DECISION AND DISCUSSION

 Initially, we must note that the Wrights' numerous violations of our appellate rules made analyzing their assertions of error extremely difficult and burdensome. Their Statement of the Facts is completely devoid of references to the record, in violation of Indiana Appellate Rule 8.3(A)(5). We remind the Wrights that we are unwilling to sift through a record to locate error so as to state an appellant's case for him. *Nehi Beverage Co., Inc. v. Petri,* 537 N.E.2d 78, 81 (Ind.Ct.App.1989).

 The Wrights' Statement of the Facts is also rife with argument, which is inappropriate in that part of an appellate brief. A Statement of the Facts should be a concise narrative of the facts stated in a light most favorable to the judgment, and should not be argumentative. *Id.* at 82. The Statement of the Facts the Wrights offer us is comprised mostly of self-serving argument and is clearly not intended to be a vehicle for informing this court.

The Wrights' Statement of the Case is also defective. Most notably, it does not include a verbatim statement of the trial court's judgment as required by Appellate Rule 8.3(A)(4). Rather, it includes only an uncited

---

2. Neither the Wrights nor Elston set forth the trial court's order in their briefs. Our own review of the record shows the court found, in relevant part, as follows:

 3. Because plaintiffs have failed to give the required notice pursuant to the Indiana Tort Claims Act within the applicable timeframe any claim in tort concerning the alleged malpractice in pursuing the criminal appeal is barred.

4. In addition, plaintiff Charles Wright raised the issue of ineffective assistance of appellate counsel in his post-conviction relief petition and the petition was denied by the court. Principles of *res judicata* and issue preclusion prevent the relitigation of this issue in a damages hearing. . . .
R. at 368.

oral order which the Wrights purport was made by the Special Judge. The Wrights nowhere acknowledge that they altered or edited the trial judgment.

■ On those occasions in the argument section of their brief where the Wrights refer us to legal authority to support their arguments, they do not favor us with pinpoint citations to help us determine where, within a decision, support for their contentions may be found, or even whether support can be found in that decision at all. In fact, there is but a single pinpoint citation to be found in the Wrights' argument section. We direct the Wrights to Appellate Rule 8.2(B)(1), which states that citations to cases in briefs should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). When referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. Uniform System of Citation Rule 3.3 (16th ed.1996). As noted above, we will not, on review, sift through the record to find a basis for a party's argument. Nor will we search through the authorities cited by a party in order to try to find legal support for its position.

■ Finally, the arguments presented in the Wrights' brief were extremely difficult to follow. A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 659 (Ind.1985). When no cogent argument is presented, our consideration of the issue is waived. *Quick v. State*, 660 N.E.2d 598, 601 n. 4 (Ind.Ct.App. 1996), *reh'g denied.*

■ We acknowledge the Wrights' right to appeal as well as their right to appeal *pro se.* However, we remind them that the fact they are proceeding without an attorney does not excuse them from following our appellate rules. A litigant who chooses to proceed *pro se* will be held to the same established rules of procedure as trained legal counsel. *Diaz v. Carpenter*, 650 N.E.2d 688, 691 (Ind.Ct. App.1995). We further remind the Wrights that well-reasoned arguments making proper references to the record and supported with citations to legal authority are far more persuasive to this court than rambling stream-of-consciousness assertions which rely on excessive use of bold-face type.

The Wrights' numerous violations of our appellate rules would justify our finding their arguments are completely waived. However, we prefer to decide appeals on the merits. We choose to do so in this case only to resolve this long-standing dispute.

### 1. *Eligibility of Special Judge*

■ The Wrights argue that Special Judge Davis was ineligible to serve as special judge in their case pursuant to Trial Rule 79(J)(1), which provides that any judge is eligible for appointment by a trial court as a special judge unless the judicial official has previously served as judge or special judge in the case.

We note that finding a special judge for the Wrights' case required a great deal of time, energy, and resources, primarily because of the Wrights' extensive litigation against government officials. Our Supreme Court ultimately decided that Judge Davis had jurisdiction to serve as special judge and confirmed his appointment under Trial Rule 53.1. R. at 164–65.

The confusion in this matter appears to have arisen because the appointment judge from the administrative district in which the case was pending was not aware that the matter had been sent to the Indiana Supreme Court when he appointed Judge Davis to handle the case. Following his appointment by the appointment judge, Judge Davis' only acts were to set all motions for hearing and to grant Charles Wright's motion to be transported to the hearing. R. 139, 149. When Judge Davis learned of the T.R. 53.1 praecipe and the question of whether he had proper jurisdiction, he took no further action.

The Wrights appear to argue that Judge Davis was ineligible for appointment by our Supreme Court because he had previously served as special judge in their case. However, if jurisdiction had been vested in our Supreme Court under T.R. 53.1 at the time of his "first" appointment, then Judge Davis

never had jurisdiction over their case. Without such jurisdiction, any action taken by Judge Davis would have been void and had no effect whatsoever. *See Carter v. Allen,* 631 N.E.2d 503, 507 (Ind.Ct.App.1994). Consequently, Judge Davis never assumed jurisdiction or issued any valid orders. Therefore, not having officially served as special judge in this case, he was eligible for appointment under T.R. 79(J).

■ Further, we note that T.R. 79(J) only prevents a trial court from appointing a judge who had previously served in a case. Nothing in the trial rule prevents our Supreme Court from taking such an action to appoint a special judge.[3] Thus, the Wrights' claim must fail.

### 2. *Alleged Bias of Special Judge*

■ The Wrights claim the special judge's statements made on record indicate a strong bias against the Wrights. The law presumes a judge to be unbiased and unprejudiced. *Haynes v. State,* 655 N.E.2d 505, 507 (Ind.Ct.App.1995). In order to overcome this presumption, the party asserting the bias must show that the trial judge has a personal prejudice for or against a party. *Matter of D.T.,* 547 N.E.2d 278, 283 (Ind.Ct. App.1989), *reh'g denied.* For a party to prevail on this issue, there must be a showing that the record discloses actual bias and prejudice of the judge. *Ware v. State,* 567 N.E.2d 803, 806 (Ind.1991). Bias or prejudice exists only where there is an undisputed claim of bias or prejudice or the judge has expressed an opinion on the controversy. *Haynes,* 656 N.E.2d at 507.

The Wrights cite the following comment made by Judge Davis as evidence of his prejudice and bias:

> Okay, alright now I'm going to overrule their objections to a continuance. They've had a continuance so you can get a continuance but it is a 1995 case and we don't want to drag it on forever. I know that a

lot of the delay has not been your fault and I'm not holding that against you but on the other hand at some point in time people like to have a conclusion and you apparently have been in court and you know how that feels to not have a conclusion to your case.... Well, there is a, this other side would like to have a conclusion as well. They'd like to have an end brought to it or at least something moved along and just as I'm sure you would too so I don't want to continue it indefinitely and it would be my intention to hear whatever anyone has to say January 23rd at 1:00 p.m., 1998 and then I'll make a ruling on all these motions and so forth that are pending and....

R. at 388–89.

We find these comments, on their face, imply no prejudice or bias whatsoever. Judge Davis was merely expressing his desire to keep the case progressing. As the parties had been litigating the issue for over two years with little progress, Judge Davis' comments were entirely appropriate. The Wrights' contention that his comments demonstrated some sort of bias or prejudice is without merit.

### 3. *Applicability of Tort Claims Act*

■ The Wrights' lawsuit against Elston stems from Elston's role as chief public defender and is an action for negligence in the form of legal malpractice, a tort under state law. In her answer to the Wrights' complaint, Elston raised the Wrights' failure to comply with the notice provisions of the Indiana Tort Claims Act[4] as an affirmative defense.

We addressed whether the Indiana Tort Claims Act applies to claims of legal malpractice against public defenders in *White v. Galvin,* 524 N.E.2d 802 (Ind.Ct.App.1988). In that case, the plaintiff sued a court-appointed public defender without providing notice pursuant to the tort claims act. At that time, "employee" was defined in the tort claims act

**3.** We also note that, even if the Wrights were correct in their assertion that Judge Davis was ineligible to serve as special judge, this court does not have jurisdiction to review any action of the Indiana Supreme Court. *See Kindred v. State,* 639 N.E.2d 286, 287 (Ind.Ct.App.1994);

*see also Justak v. Bochnowski,* 181 Ind.App. 439, 448, 391 N.E.2d 872, 878 (1979), *cert. denied,* 449 U.S. 828, 101 S.Ct. 92, 66 L.Ed.2d 31 (1980).

**4.** Ind.Code § 34–13–3–1 *et seq.*

as one who was acting on behalf of a governmental entity. Independent contractors were excluded. We found that a public defender was not included under that statutory definition, as a county had no right to control the actions of a public defender, a condition normally necessary for imposing vicarious liability. Second, we found that the public defender was not acting on behalf of the governmental entity in that, by representing a criminally accused, the public defender was acting as an adversary to the government.

However, after our decision in *White*, Indiana's tort claims act was amended by P.L. 288–1995, which became effective on July 1, 1995. The definition of employee, as found in Indiana Code Section 34–4–16.5–2(b) (now codified at Indiana Code Section 34–6–2–38), was changed to read as follows, in relevant part:

> "Employee" and "public employee" mean a person presently or formerly acting on behalf of a governmental entity whether temporarily or permanently or with or without compensation.... The term also includes attorneys at law whether employed by the governmental entity as employees or independent contractors....

This statute extends immunity under the Indiana Tort Claims Act to attorneys employed by a governmental entity, whether as an employee or as an independent contractor. As the chief public defender for Clark County and a full-time, salaried employee of the county, Elston would be an employee for purposes of the tort claims act.

Indiana Code Section 34–4–16.5–7 (now codified at Indiana Code Section 34–13–3–8) requires a claimant to file a notice of tort claim with the governing body of the political subdivision within 180 days after the loss occurs. The plaintiff bears the burden of proving compliance with the notice provisions of the tort claims act. *Indiana Dep't of Highways v. Hughes*, 575 N.E.2d 676, 678 (Ind.Ct.App.1991). If the plaintiff fails to serve a notice of a tort claim within 180 days of his loss, the suit is barred and entry of summary judgment on behalf of the defendant is appropriate. *Holtz v. Board of Comm'rs of Elkhart County*, 560 N.E.2d 645, 648 (Ind.1990).

Elston argues that the trial court properly found that the Wrights' claim was barred because they never gave notice to the Clark County Commissioners or the Clark County Public Defender. We agree. Indiana Code Section 34–4–16.5–12 (now codified at Indiana Code Section 34–13–3–13) provides that a person may not initiate a suit against a governmental entity unless his claim has been denied in whole or in part. This requirement prohibits a claimant from filing a lawsuit before he has complied with the claims procedure. *Bradley v. Eagle-Union Community Sch. Corp.*, 647 N.E.2d 672, 676 (Ind.Ct.App.1995), *reh'g denied*. Because a tort action against a governmental employee for actions taken within the scope of his or her employment may impose liability upon the government employer, a plaintiff must provide notice to the employing agency before an action can proceed against the agency's employee. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 438 (Ind. Ct.App.1996), *reh'g denied, trans. denied*, 683 N.E.2d 588 (Ind.1997).

The record shows the Wrights never served notice upon any governmental entity relating to their claim against Elston. As Elston was a covered government "employee" under Indiana's Tort Claims Act, the Wrights were required to give notice to Elston's employer, either the Clark County Commissioners or the Clark County Public Defender's Office, before proceeding with a lawsuit. Their failure to do so bars their lawsuit against Elston.

### 4. *Res Judicata*

The Wrights argue the trial court erred in finding their claim was barred by the principles of issue preclusion and *res judicata*. We agree. The trial court's order suggests the Wrights' claim against Elston was barred because this court has previously found that Elston was not ineffective in her representation of Wright at trial. *See Wright v. State*, 663 N.E.2d 210, 212–13 (Ind. Ct.App.1996). As noted in *Hockett v. Breunig*, 526 N.E.2d 995, 999–1003 (Ind.Ct.App. 1988), a finding that counsel was not ineffective can provide the necessary identity of

issues to preclude malpractice actions stemming from the same proceedings. However, the Wrights' latest claim of malpractice against Elston stems from her representation of Wright on his appeal. Elston's effectiveness as appellate counsel has not been addressed by any court. As such, the issue of whether she was negligent in her appellate representation of Wright has not been resolved and cannot be barred by the principles of issue preclusion or *res judicata*. The trial court erred in so finding. However, as we have found that the Wrights did not properly give notice under the Tort Claims Act as required by Indiana law, remand to the trial court for resolution of this issue is unnecessary.

Affirmed.

NAJAM and FRIEDLANDER, JJ., concur.